In re Disciplinary Counsel La.St.Bar;— Other(s); applying for finding and recommendations and formal charges.
DISCIPLINARY PROCEEDINGS
PER CURIAM.*
This matter arises from three counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Ronald A. Welcker, an attorney currently disbarred from the practice of law.[1] The charges allege violations of Rules 1.4(a) and (b), 1.15(a)(b) and (d), 5.1(b) and (c), 5.3(b) and (c), 8.1(a) and 8.4(a) and (g) of the Rules of Professional Conduct.
The first count arose from a complaint filed by Cheryl Tullier and June Tullier Loc-kart. The complainants hired respondent to represent them in 1990 in connection with their uncle’s succession. Over the next five years, complainants made repeated phone calls to respondent seeking information, but he failed to return their calls. Subsequently, the complainants checked the court records and learned that in December, 1992, respondent settled some outstanding succession litigation for the sum of $3,000 without their knowledge or consent. In July, 1994, respondent issued a check in the amount of $1,000 to Barbara Jumonville, another heir who was also an employee of respondent’s law firm. Complainants never received their portion of the settlement proceeds, and respondent failed to provide an accounting to them.
After the complaint was filed, the ODC sent a copy of it to respondent and requested a reply. He failed to do so. Respondent did appear pursuant to a subpoena, but failed to *187 address the merits of the complaint. He requested an additional ten days in which to provide information, but failed to submit any information within that time period. Subsequent investigation by the ODC revealed that although respondent deposited a portion of the $3,000 settlement proceeds into his trust account, his account balance fell below that amount on several occasions. Additionally, the ODC learned that although respondent’s trust account generated interest, the account was not registered with the IOLTA program, and respondent apparently kept the interest for his own benefit.
The second count arose from a complaint filed by Miehon Nathan. Ms. Nathan retained respondent to represent her in connection with an automobile accident that occurred in December, 1993. Respondent sent her to several doctors for tests, but failed to pay the bills associated with those tests. The health care providers then began sending bills directly to Ms. Nathan. She attempted to contact respondent, but he would not return her calls.
After the filing of the complaint, respondent appeared for deposition. In response tó questioning by the ODC, he indicated that he had settled Ms. Nathan’s claim for $9,500.00 and had paid all health care providers except for one. However, Ms. Nathan denied authorizing such a settlement. As of the date of the hearing, respondent had failed to account for the funds, and the money had apparently disappeared.
The third count arose from a complaint filed by Robert W. Sawyer, Jr., an employee of the Louisiana Department of Health and Hospitals (“DHH”). The complaint indicated that respondent represented personal injury victims in a medical malpractice action. Respondent negotiated a large settlement in favor of his clients, but the DHH asserted a third party right of reimbursement or indemnification in the amount of approximately $213,000. Respondent retained this sum from his client’s settlement and forwarded a check in this amount to DHH, but the cheek was returned for insufficient funds.
After the filing of the complaint, respondent appeared for deposition before the ODC. Respondent indicated that all of his personal and operating accounts were subject to an IRS lien in the amount of $400,000. He stated he has left his attorney fees and return of costs in his client trust account, where they would not be subject to attachment or levy by the IRS, and he used those funds for his operating expenses. Due to this arrangement, he indicated that the $213,000 in funds he had set aside for DHH’s claim had been “inadvertently” removed from the client trust account by his employees and used for operating expenses of his office.
After the filing of formal charges by the ODC, respondent failed to answer and the charges were deemed admitted.
The hearing committee found that the evidence clearly established that respondent commingled and converted client funds. It found respondent presented no mitigating evidence, and noted that realistically there could be no mitigation of conduct so egregious as the facts indicated. As aggravating factors, the committee felt the offenses indicated a pattern of misconduct, and pointed out it had previously recommended respondent be disbarred in connection with another proceeding involving conversion of client funds, forgery, fraud, deceit and misrepresentation.[2] Based on these factors, it concluded disbarment was the only appropriate sanction. Additionally, it recommended that if respondent applied for readmission, he be required to make restitution to all complainants in this matter.
The disciplinary board agreed with the recommendation of the hearing committee. It found the following aggravating factors: 1) prior disciplinary offenses,[3] 2) lack of remorse, 3) vulnerability of the victims, 4) failure to cooperate, and 5) a pattern of miscon *188 duct. It found no mitigating factors. The board concluded disbarment was an appropriate sanction. It further recommended that the disbarment begin from the date of finality of this court’s judgment in the instant matter, and not from the date of his prior disbarment. Additionally, it recommended that respondent’s readmission be subject to the following conditions:
1) Pay restitution to his clients and the Louisiana Department of Health and Hospitals by at least the year prior to making his application for readmission;
2) Take and pass the MPRE examination in the year prior to making his application for readmission; and
3) Demonstrate he has kept informed of recent developments in the law and has placed particular emphasis on ethics and the Rules of Professional Conduct.
However, the board cautioned that even if respondent complied with these conditions, his readmission should not be automatic. It pointed out that respondent’s conduct was “outrageous, inexcusable and contemptible,” and noted respondent’s actions made a compelling case for the adoption of a permanent disbarment procedure in Louisiana.
Neither respondent nor the ODC filed objections to the recommendation of the disciplinary board.
Upon review of the findings and recommendations of the hearing committee and disciplinary board and the record filed herein, it is the decision of this court that the disciplinary board’s recommendation be adopted.
Accordingly, it is ordered that respondent, Ronald A. Welcker, previously disbarred by this court, is prohibited from petitioning this court for readmission pursuant to Supreme Court Rule XIX, § 24(A) until five years have elapsed from the finality of this judgment. See Louisiana State Bar Ass’n v. Krasnoff, 502 So.2d 1018 (La.1987). It is further ordered that should respondent make an application for readmission, his application must be subject to the conditions imposed by the disciplinary board, with the modification that his payment of full restitution or efforts to make restitution will be considered at that time. However, we caution respondent that fulfillment of these conditions will not alone suffice to warrant readmission. All costs of these proceedings are assessed against respondent.

 Marcus, J. not on panel. Rule IV, Part 2, § 3.

. Respondent was disbarred by this court on June 3, 1997 for two counts of commingling and converting client funds. In re: Welcker, 97-0825 (La. 6/3/97), 694 So.2d 918.

. This court subsequently accepted the committee's recommendation of disbarment. See In re: Welcker, 97-0825 (La. 6/3/97), 694 So.2d 918.

. In addition to respondent's disbarment by this court, the board noted there was another matter involving similar misconduct (97-DB-009) pending before a hearing committee. Respondent also received a public reprimand on August 8, 1989 and an admonition on October 2, 1990.